IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

|  |  |
|---|---|
| SITO MOBILE R&D IP, LLC and SITO MOBILE, LTD.<br><br>                         Plaintiff,<br><br>        v.<br><br>HULU, LLC,<br><br><br>                   Defendant. | Case No. 6:20-cv-00472-ADA |

**PLAINTIFFS SITO MOBILE R&D IP, LLC AND SITO MOBILE, LTD.'S BRIEF IN**
**OPPOSITION TO DEFENDANT HULU, LLC'S MOTION TO TRANSFER**

## <u>TABLE OF CONTENTS</u>

I.  Introduction ........................................................................................................... 1

II.  Statement of facts................................................................................................... 1

   A.  Hulu has significant contacts with Texas and this District. ..................................... 1

   B.  SITO has had significant business connections with Texas, and its key
       third-party witnesses reside in Texas and are an easy drive away from
       testifying in Waco. .............................................................................................. 6

III.  Applicable Legal Standards .................................................................................... 9

IV.  Argument. ............................................................................................................. 11

   A.  The private interest factors weigh against transferring this case to California. ..... 11

       1.  The sources of proof are spread across the country and in Texas,
           and are not clearly more conveniently located in California. .................... 11

       2.  The availability of compulsory process to secure the attendance of
           witnesses at trial. ................................................................................... 13

       3.  Hulu fails to show that the cost of attendance for willing witnesses
           favors transfers. ..................................................................................... 14

       4.  SITO has multiple suits pending in this District, which will cause
           significant practical problems if this case is transferred. ......................... 17

   B.  Public Factors do not weigh in favor of a transfer. .............................................. 19

       1.  There are no administrative difficulties flowing from court congestion. ..19

       2.  Local interest in having localized interests decided at home. ................... 20

       3.  Factors 3 and 4. ....................................................................................... 20

V.  Conclusion ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
    358 F.3d 337 (5th Cir. 2004) ...............................................11

*In re Adobe Inc.*,
    No. 2020-126, 2020 U.S. App. LEXIS 23803 (Fed. Cir. July 28, 2020).................................19

*Certified Measurement, LLC v. Centerpint Energy Houston Elec. LLC*,
    No. 2:14-CV-627-RSP, 2015 WL 1046267 (E.D. Tex. Mar. 10, 2015)..................................13

*CloudofChange, LLC v. NCR Corporation*,
    No. 6:19-cv-00513, D.I. 28 (W.D. Tex. Mar. 17, 2020)..........................................13

*Continental Airlines, Inc. v. American Airlines, Inc.*,
    805 F.Supp. 1392 (S.D. Tex. Nov. 4, 1992) ...............................................16

*Continental Grain Co. v. The FBL-585*,
    364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)............................................19

*Durrett v. Walmart, Inc.*,
    2018 U.S. Dist. LEXIS 186618 (E.D. Tex. Oct. 31, 2018) ....................................11

*East Tex. Boot Co., LLC v. Nike, Inc.*,
    2017 U.S. Dist. LEXIS 166701 (E.D. Tex. Feb. 15, 2017) ....................................17

*Fintiv, Inc. v. Apple Inc.*,
    No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102
    (W.D. Tex. Sep. 10, 2019) ...............................................11, 13, 19

*Found. Med., Inc. v. Guardant Health, Inc.*,
    2017 U.S. Dist. LEXIS 20431 (E.D. Tex. Feb. 14, 2017) .....................................20

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)...............................................14

*Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*,
    2009 U.S. Dist. LEXIS 13210 (E.D.Tex. Feb. 20, 2009) ..................................10, 18

*Godo Kaisha Ip Bridge v. Intel Corp.*,
    No. 17-CV-00676-RWS, 2018 U.S. Dist. LEXIS 221582
    (E.D. Tex. Aug. 28, 2018) ...............................................12

*Hammond Dev. Int'l, Inc. v. Google LLC*,
  No. 1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984
  (W.D. Tex. June 24, 2020)...................................................................................14, 19

*Magana v. Toyota Motor Corp.*,
  No. 3:10-CV-1451-B, 2010 U.S. Dist. LEXIS 129976
  (N.D. Tex. Dec. 6, 2010) .................................................................................14

*Net Nav. Sys., LLC v. Cisco Sys., Inc.*,
  No. 4:11-CV-660, 2012 U.S. Dist. LEXIS 187289 (E.D. Tex. Aug. 24, 2012) ......................15

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
  No. 2:18-cv-00390-RWS-RSP, 2019 U.S. Dist. LEXIS 90416
  (E.D. Tex. May 30, 2019) ................................................................................14

*Rittinger v. Healthy Alliance Life Ins. Co.*,
  2016 U.S. Dist. LEXIS 132726 (S.D. Tex. July 27, 2016)....................................................16

*Rosemond v. United Airlines, Inc.*,
  No. H-13-2190, 2014 U.S. Dist. LEXIS 45162 (S.D. Tex. Apr. 2, 2014)..............................15

*Sivertson v. Clinton*,
  2011 U.S. Dist. LEXIS 104097 (N.D. Tex. Sept. 14, 2011)...................................................14

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)..........................................................................................10

*In re Triton Ltd. Sec. Litig.*,
  70 F. Supp. 2d 678 (E.D. Tex. 1999)........................................................................10

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
  No. 6:12-CV-398 ...........................................................................................15

*Uniloc United States v. Huawei Device United States*,
  2018 U.S. Dist. LEXIS 234545 (E.D. Tex. Sep. 6, 2018) .....................................................18

*VLSI Tech. LLC v. Intel Corp.*,
  2019 U.S. Dist. LEXIS 227809 (W.D. Tex. Oct. 7, 2019) ....................................................16

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ........................................................................11, 20

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009)...........................................................................19

*In re Volkswagen of America, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...............................................................10, 11, 18

## I.      Introduction

Hulu's motion to transfer this case to the Central District of California should be denied because Hulu has not met its burden of showing that the Central District of California is *clearly more* convenient than Waco. This is clear from the thin papers it filed. Hulu relies on bare statements and generalizations about its operations in Santa Monica and third party entities, many of whom have offices in Austin and within this Court's subpoena power, to claim that this case has significant ties to the Central District. With the exception of a single witness whose importance to this case is marginal at best, Hulu does not identify any specific witness it intends to call at trial. Additionally, many of the relevant Hulu documents are stored in the cloud and can be accessed from any location. Conversely, the connections in Texas for both Hulu and SITO are robust. In fact, two of the at least four SITO trial witnesses are key non-party witnesses residing in Austin and Plano; they can simply drive to Waco for trial.

Hulu's strategy in filing this motion is transparent: move the litigation to a slower venue and use the four IPRs and one CBM that it has filed to stay the case. This strategy should fail and the instant motion denied because none of the private or public interest factors favor transfer.

## II.     Statement of facts.

### A.      Hulu has significant contacts with Texas and this District.

Hulu has ▮▮▮▮▮▮ total subscribers in Texas, and its second largest office, with ▮▮ employees, is located in San Antonio, Texas. *See* Hulu's Responses to Interrogatory Nos. 5 and 8, attached as Ex. 1 to Declaration of Ronald M. Daignault ("Daignault Decl.").[1] Indeed, in just one year, from September 2019 to October 2020, Hulu generated total revenue of ▮▮▮▮▮▮▮▮ from subscribers in Texas. *Id.* at 26. Moreover, Hulu ▮▮▮▮▮▮▮▮ received significant tax

---

[1] All cites to exhibits in this brief are to the exhibits of the Daignault Decl.

breaks and grant payments from the State of Texas. *See, e.g.,* Ex. 20 at 11.

In addition to revenue Hulu generates from Texas subscribers, Hulu receives revenue from ██████████████████████████████████████ located in Texas, including in the Western District of Texas. Hulu conveniently hides this fact in its brief by falsely asserting that "no ad[vertising] or [c]ontent partners [exist] in W.D. Tex." D.I. 29 at 7 (citing to Mr. Brookins's Dec. at ¶21). But in reality, Hulu has ████████████████████████████████████ ████████████████████████████████████████████████████ *See* Ex. 1 at 16-24. And ████████████████████████████████████ would *not* have been uncovered without discovery, which Hulu opposed, and stands in stark contrast to both Hulu's and Brookins's blatantly incorrect statements. ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████ *See* Daignault Decl. at ¶2.

Hulu also tries to downplay the relevance of its employees at its large San Antonio facility and paint an overall picture that it has no connections to Texas. Discovery has revealed many of the self-serving statements in Mr. Brookins's declaration and in Hulu's brief are inaccurate, inconsistent, and once again, often just plain wrong. Mr. Brookins is the only person Hulu identifies as a witness having knowledge about the accused products; he is Hulu's apparent 30(b)(6) party witness. But Hulu does *not* identify Brookins as a key trial witness. ██████████████ ████████████████████████████████████████████████████ ████████ *See* Ex. 3 at 21:3-6 ("Brookins Dep."). Accordingly, ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at 22:17-22.

2

Hulu's San Antonio offices houses at least its Viewer Experience Operations, which is tasked with, among other things, resolving customer issues relating to the accused streaming products. *Id.* at 70:12-71:8 and *see* Ex. 2 (TechCrunch article). ███████████████████ ███████████████████████████████████ Brookins Dep. at 82-83.

Further, Hulu is provided to subscribers throughout Texas, including in Waco through major cable providers such as Charter Communications and Comcast. *See generally* Exs. 7 and 8. Broadband distributors in Texas, including Grande Communications, also provide Hulu as part of their services to over ████████ viewers. *See* Ex. 4. Likewise, both Funimation Network, located in Flower Mound, TX, and Fox Sports Southwest, headquartered in Irving and Houston, TX, provide content through Hulu. *See* Ex. 5. Hulu states that its "content partners, including CW Network and FX Network in C.D. Cal. have unique information about how Hulu tracks and distributes ad revenues." D.I. 29 at 7. But this same "unique information" can also be obtained through ██████████████████████ Austin, ███████████ within this Court's subpoena power. *See* Daignault Decl. ¶2. Accordingly, contrary to the picture Hulu tries to present to the Court, Hulu has a significant business presence in Texas, and the Waco Division District, that allow for generation of substantial revenue from its activities in Texas.

Another misperception Hulu creates is that both Hulu witnesses and third-party witnesses are more conveniently located in California (or only located in California), and that Texas would be inconvenient for them. But there are problems with Hulu's assertions. Starting with Mr. Brookins; ██████████████████████████████████████████████ ██████████████████████████████ Brookins Dep. at 25:21-26:8. ███████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████

3

████████ *Id.* at 46:12-16. ███████████████████████ appearing as a party witness for trial in Waco is no more burdensome than ██████ business trips. More importantly, though Brookins's declaration (and Hulu's brief) generically discuss Hulu's engineers and other personnel purporting to have knowledge of issues relevant to the case, *not one specific individual is identified. See* D.I. 29-1 at ¶¶ 5-7, and 9. Indeed, ████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ Brookins Dep. at 19:19-20:14; 30:23-31:5. Hulu, therefore, cannot state with any accuracy whether these purported witnesses would not be able to testify in Waco or even if Hulu would ask any of them to appear for trial.

As to third parties, Hulu identifies a multitude of large technology companies that provide the Content Distribution Network (CDN) through which Hulu streams its content, a few individuals and companies purportedly relevant to prior art, content partners, and advertising companies with the goal of creating an impression of convenience because of their headquarters / residence being in California. *See* D.I. 29 at 3-4; D.I. 29-1 at ¶¶13-20. But again, Hulu and Brookins fail to identify any specific witnesses at these CDNs, content partners, and advertising companies. And Hulu keeps quiet on the fact that the majority of these companies have significant presences here in this District and are within this Court's subpoena power, including ████████████████████████ *See* Exs.16-19. Further, ██████████████████████ ████████████████████████████████████████████ including ██████████ ████████████ or any others. *See* Brookins Dep. at 99:2-4; 99:22-100:4. Thus, Hulu's statements concerning the location and availability of these other potential, but unnamed witnesses to testify at trial and the location of documents related to these third-parties are conjecture. Similarly, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at 116:21-119:13. Certain of those

companies are within this Court's subpoena power, but have no locations within the subpoena

power of the Central District of California. Hulu has no basis to speak for these witnesses.

Hulu also relies on a declaration from Christopher Newton, a third party. *See* D.I. 28-1.

But Mr. Newton's declaration is flawed. Newton purports to be a third-party witness who

worked at Sandpiper Networks in the mid-1990s. *Id.* at ¶¶3-4. He states that he will discuss U.S.

patent no. 6,185,598 and other prior art systems that Sandpiper created. *Id.* at ¶¶4-5. Though

SITO disagrees that either the '598 patent or the other Sandpiper prior art systems are

invalidating prior art, Newton is certainly not the proper witness to discuss the Sandpiper prior

art because he is *neither* named on any of the prior art documents *nor* is he even listed as a

named inventor on the '598 patent. Any testimony he provides about the '598 patent would have

no value. Indeed, the four corners of the '598 patent and other documents is what would be at

issue, not the testimony from a lay witness who is not even an inventor on the patent (a motion in

limine would exclude his testimony). And Hulu does not claim that Mr. Newton is an expert.

Moreover, in a self-serving manner, Newton says he would testify in Los Angeles, but not at all

in Waco. *Id.* at ¶7. But if Newton refuses to appear in Waco altogether, he clearly is not

important enough to Hulu's case. This is because it is the '598 patent and other documents

discussing the Sandpiper systems that are purportedly prior art, not inventor lay testimony.

Hulu's convenience factors also face problems with respect to the location of its own

documents and source code. *See* D.I. 29 at 2-3. Brookins admitted that numerous technical

documents are stored in ████████████████████████ *See* Brookins Dep. at

46-51. Similarly, source code is ████████████████ *Id.* And as this Court is well aware,

5

source code review is unique in patent litigation, and often brings with it inconvenience, given the highly confidential nature of the code and the limited number of persons who can review it, namely, a few code reviewers and an expert witness. Traveling ███████ to review code or agreeing to some other arrangement is to be expected. When Brookins was asked about financial documents, ████████████████████████████████████████████████ ████████████████████████████████████████ *Id*. Thus, like most modern companies, Hulu's documents are accessible from any of its offices, including San Antonio. And finally, as to third-party documents from the various companies Hulu enlists, Hulu has no idea where those third-party documents are located, setting aside the fact that is has no idea who the actual third-party witnesses will be.

At bottom, as the facts above show, despite its efforts, Hulu cannot disavow and downplay its significant business activities and revenue in Texas, and the potential witnesses connected to Hulu's Texas activities. Conversely, Hulu utterly fails to meet its heavy burden in showing that the Central District of California is a *clearly more* convenient forum by identifying specific key witnesses and documents, particularly third parties.[2]

**B.     SITO has had significant business connections with Texas, and its key third-party witnesses reside in Texas and are an easy drive away from testifying in Waco.**

Thomas Candelaria is SITO's CEO, and in his declaration, he details SITO's extensive business activities and contacts with Texas. *See* Declaration of Thomas Candelaria in Support of

---

[2] Hulu asserts that the 2012 suit SITO filed against Hulu is akin to an admission that the Central District of California is the appropriate venue. *See* D.I. 29 at 4-5. That is incorrect. The 2012 lawsuit was filed without authorization and approval of SITO's board. *See* Candelaria Decl. at ¶17. SITO did not have an opportunity to assess the allegations made in the Complaint. *Id*. This unauthorized complaint was never served on Hulu and the case was voluntarily dismissed under Fed. R. Civ. P. 41(a). *Id.*

SITO's Opposition to Hulu's Motion ("Candelaria Decl."). Over the last several months, SITO has run into financial difficulty and filed for Chapter 11 reorganization. But as late as August, 2020 (after the complaint was filed), SITO employed several persons who reside in or near Dallas, and a short drive from Waco. In fact, since 2016, SITO maintained a large sales force in Texas, run by Mr. Sean Clayton. *Id.* at ¶8. SITO has also generated significant revenue from customers based in Texas since 2017, including one of its largest partners Growth Hackers, LLC, which was located in Dallas. *Id.* ¶9. Despite a downturn in business and current reorganization efforts, SITO continues to seek out customers based in Dallas, as well as within the Western District of Texas. *Id.* at ¶11. Indeed, Mr. Candelaria anticipates that by the time this case goes to trial, SITO will be, once again, receiving a significant portion of its total revenue from companies located in Texas. *Id*. Hulu's contention that SITO has not relevant ties to this District is just wrong. D.I. 29 at 4.

Additionally, SITO created a joint venture in Texas with Personalized Media Communications ("PMC") called "VideoStar LLC." VideoStar is a Texas limited liability company located in Sugar Land, Texas *Id*. at ¶15. Aaric Eisenstein is the manager of VideoStar and lives in Austin. *See* Declaration of Aaric Eisenstein ("Eisenstein Decl.") at ¶¶2-4. As a joint venture between SITO and PMC, VideoStar licensed patents, including the asserted patents, to Television Technology, LLC and its affiliates located in Texas, such as Fox Sports Southwest. Candelaria Decl. at ¶16; Eisenstein Decl. ¶5. Mr. Eisenstein has firsthand knowledge of the VideoStar license agreement and license negotiations with Television Technology and will be an important third-party witness in this case, relevant to such issues as damages and secondary considerations. And VideoStar's documents are also located in Texas. For Mr. Eisenstein, Waco is only an hour and a half drive from Austin.

The only living inventor on the asserted patents is Donald Bate who lives in Plano, Texas. He is a critical and relevant third-party witness in this case. Indeed, as this Court is well aware, in addition to experts, inventors are key witnesses at trial. Mr. Bate has lived in Plano for thirty-three years. *See* Declaration of Donald Bate ("Bate Decl.") at ¶2. Mr. Bate received his computer science degree from UT, Austin and his Master's from Stanford University. He has worked in the computer industry and high tech for most of his career, including at Texas Instruments and as an independent consultant for Sprint and AT&T. In fact, he began coding when he was nine years old. Mr. Bate has an interesting story to tell, and he will testify about his work at World Streaming Networks (which later became Stream Works Technologies) and the work he did with his co-inventor Chuck Jennings (now deceased) relating to claimed inventions. Bate Decl. ¶¶4-8. And Mr. Bate has business records from his work at World Streaming Networks at his home in Plano. Mr. Bate, however, has significant ongoing health concerns that, under the advice of his physician, prevent him from traveling to Los Angeles for a trial. In 2001, Mr. Bate was diagnosed with ███████████████████████████ which he survived. But because of his weakened ████████ conditions, he later developed █████ as a secondary side-effect. And just recently, in June 2019, Mr. Bate's ██████████████████████ ████████████████████████████████████████████████ Bate Decl. ¶¶10.-11. With the current Covid-19 crisis, Mr. Bate does not feel safe traveling to Los Angeles for a trial; and that is the case even if the crisis diminishes at some point in 2021. Indeed, even before the pandemic began, with Mr. Bate's serious health condition and ████ ████████ his physician instructed him not to travel on flights longer than an hour, but preferred no plane travel at all. Bate Decl. ¶¶12-13. Mr. Bate, however, is willing to drive from his home in Plano to Waco for trial. He can drive and get to Waco in two hours or less. Bate Decl. ¶14.

As a third-party witness, the importance of Mr. Bate's trial testimony as the only surviving inventor on the patents-in-suit and his serious health condition clearly outweigh any inconvenience Mr. Brookins may experience traveling to Waco for trial, particularly given his regular monthly travels, and any inconvenience other unidentified Hulu party witnesses and unidentified prior art witnesses may experience as well.

In addition to Aaric Eisenstein and Don Bate, Mr. Gene Bowen is another key third party witness in this case. Mr. Bowen worked closely with Chuck Jennings and Don Bate at World Streaming Networks on a variety of projects associated with streaming management systems and media routing algorithms, and in solving practical problems related to video distribution systems, distributor rights, OTA transports and other related technologies. Bowen Decl. ¶¶ 1-6. He also co-founded StreamWorks Technologies, the successor to World Streaming Networks and worked to develop the patent portfolio, and was with the company when the portfolio was sold to Single Touch, a predecessor of SITO. *Id.* at ¶7. Interestingly, Mr. Bowen is a pilot and lives near an airstrip in Placerville, California, near Lake Tahoe. Mr. Bowen owns a plane and is willing to fly to Waco for trial and can stop in Dallas to visit with his primary flight instructor. *Id.* at ¶¶2, 8. But even if Mr. Bowen flies commercially, traveling to Los Angeles is not much more convenient than to travel to Waco. *Id.* at ¶9.

In contrast to Hulu's failure of proof, the facts above show that SITO has significant ties to Texas and this District, specific key documents in Texas and within this District, and in addition to Tom Candelaria, key third party witnesses who are willing to travel to Waco for a trial, two of whom are only a drive away from the Court.

## III.    Applicable Legal Standards

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and

fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A plaintiff has a well-established right to choose its forum. *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999), citing *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983). Accordingly, Hulu must show "good cause" to transfer, and unless Hulu can prove that the Central District of California is "clearly more convenient" than this Court, its motion must be denied. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*"); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, 2009 U.S. Dist. LEXIS 13210, at *4 (E.D. Tex. Feb. 20, 2009). Hulu's burden to show "good cause" for the proposed transfer "directly manifests the importance that we must give to [SITO's] choice [of forum]." *Volkswagen II*, 545 F.3d at 315. In fact, in *Volkswagen II*, the Fifth Circuit explained that Congress tempered the effects of the §1391 general venue statute by enacting the venue transfer statute. It explained that the underlying premise of §1404(a) is that "courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of §1404(a)." 545 F.3d at 312-313. *Volkswagen II* was decided before *TC Heartland*. But after *TC Heartland*, a plaintiff/patentee's choice of forum is limited under §1400(b); that is, §1400(b) is *not* a general venue statute of the type addressed in *Volkswagen II*. Patentees can sue only where a defendant has an established place of business or is incorporated. As such, SITO submits that the deference due a plaintiff's choice of forum should fall somewhere between the Supreme Court's decisions in *Gilbert* and *Norwood*, and be entitled to significant weight. In any event, at a minimum, SITO's choice of forum must be taken into account and should be respected. *In re Volkswagen II*, 545 F.3d at 314, n. 10.

The determination of a "clearly more" convenient forum turns on a number of public and

private interest factors of which this Court is well aware. None of these factors are dispositive —
it is left to the Court's discretion to evaluate these factors in determining whether a defendant has
satisfied its heavy burden for a transfer of venue. *Volkswagen II*, 545 F.3d at 309; see also *In re
Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper
Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)); *Action Indus., Inc. v. U.S. Fid. & Guar.
Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

## IV.    Argument.

### A.    The private interest factors weigh against transferring this case to California.

#### 1.    The sources of proof are spread across the country and in Texas, and are not clearly more conveniently located in California.

Hulu must demonstrate that transfer will result in *more* convenient access to sources of
proof. *Fintiv, Inc. v. Apple Inc.,* No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5
(W.D. Tex. Sep. 10, 2019). In particular, this factor examines the location of the potential
documents, records, and physical evidence relevant to the case. *Durrett v. Walmart, Inc.*, 2018
U.S. Dist. LEXIS 186618, at *5 (E.D. Tex. Oct. 31, 2018) This factor weighs *against* transfer.

Hulu offers the Brookins declaration to support the majority of the arguments it makes.
But after deposing Brookins, it became clear that Brookins's declaration was high level and
broad brush, with little research into the actual details. ████████████████████
████████████████████████████████████ which as explained above
by its highly confidential nature always poses some level of inconvenience to access and review.
████████████████████████████████████████████
████████████████████████████████ Brookins Dep. at 51:7-
53:15. ████████████████████████████
████████████████████████████ Brookins Dep. at 55:7-

11

56:17. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████ *Id.* at 82-83. Thus, the documents are not more conveniently located in California.

*See Godo Kaisha Ip Bridge v. Intel Corp.*, No. 17-CV-00676-RWS, 2018 U.S. Dist. LEXIS

221582, at *13 (E.D. Tex. Aug. 28, 2018) ("that many of the same documents might be available

in Arizona and New Mexico lessens the weight of the factor").

      Next, Brookins admitted that ███████████████████████████████████

████████████████████████████████ including CDNs and alleged prior art

companies such as ████████████████████████ and others. Brookins Dep. at 99-

100; 116-119. As such, Hulu's statements about the location and availability of documents and

witnesses related to these third-parties is speculation and unsupported, and does nothing to meet

its heavy burden. And what Hulu also ignores is that many of the companies that Hulu identifies

are within this Court's subpoena power, including ████████████████ Daignault Decl.

at ¶¶ 17-20. Accordingly, these third-party witnesses are not confined to the Central District of

California, as Hulu would have the Court believe. Documents from several of these third-party

witnesses can be obtained through subpoenas from this Court.

      Hulu also identifies CW and FX networks as having information on how Hulu distributes

and tracks revenue. *See* D.I. 29 at 3. First, ██████████████████████████████ But

second, and more importantly, Brookins admitted ████████████████████████████████

███████ in Austin, ███████ within this Court's subpoena power ████████████████ These

Hulu content partners are closer to Waco, than Los Angeles. *Id.* at 107-108; Daignault Decl., ¶2.

      Hulu gets is wrong when it also argues that there are no documents relevant to SITO's

case from witnesses that are located near this Court. As mentioned above, VideoStar maintains

documents at its facilities in Sugar Land, and Mr. Eisenstein has access to VideoStar documents, including the license agreement of the asserted patents to Television Technology, from his home office in Austin. And Don Bate has records of his work at World Streaming Networks at his home office in Plano. Accordingly, documents from these third-party witnesses are located and stored far closer to this Court than the Central District of California. This factor weighs against transfer or at worst, is neutral.

> ### 2. The availability of compulsory process to secure the attendance of witnesses at trial.

"Compulsory process" factors weigh against transfer. Courts consider "the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5. "When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corporation*, No. 6:19-cv-00513, D.I. 28, at 7-8 (W.D. Tex. Mar. 17, 2020) (Albright, J.) (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006)).

Hulu cannot arbitrarily state that because third-party witnesses are in California, they can be compelled to testify in the Central District of California. *See* D.I. 28 at 7-8. In fact, despite being "in California," certain third-parties that Hulu identifies are actually in the San Francisco or San Diego area, well outside Central District's subpoena power, such as Apple ▮▮▮▮▮▮. Similarly, Microsoft is headquartered in Redmond. Apple and Microsoft, however, are within this Court's subpoena power. Daignault Decl. at ¶¶17-18. More importantly, neither Hulu nor Mr. Brookins identified specific witnesses for whom compulsory process would be required to compel that person to testify. *Certified Measurement, LLC v. Centerpint Energy Houston Elec. LLC*, No. 2:14-CV-627-RSP, 2015 WL 1046267, at *4 (E.D. Tex. Mar. 10, 2015) (weighing

compulsory process factor against transfer where "Defendants fail[ed] to identify any . . . witness or third-party witness for whom compulsory process would be required").

> ### 3.   Hulu fails to show that the cost of attendance for willing witnesses favors transfers.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech, Inc*., 566 F.3d 1338, 1343 (Fed. Cir. 2009). To prove that this factor favors transfer, Hulu "must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *Sivertson v. Clinton*, 2011 U.S. Dist. LEXIS 104097, at *15 (N.D. Tex. Sept. 14, 2011) (citing 15 Charles A. Wright, et al., Federal Practice and Procedure §3851, at 221-22 (3d ed. 2007)); *Magana v. Toyota Motor Corp*., No. 3:10-cv-1451-B, 2010 U.S. Dist. LEXIS 129976, at *5 (N.D. Tex. Dec. 6, 2010).

And "[w]hile the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Hammond Dev. Int'l, Inc. v. Google LLC,* No. 20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984, at *11-12 (W.D. Tex. June 24, 2020) ("The convenience of party witnesses is given little weight."); *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 18-cv-00390, 2019 U.S. Dist. LEXIS 90416 (E.D. Tex. May 30, 2019) (quoting *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc*., No. 10-CV-2466, 2011 U.S. Dist. LEXIS 31625 (N.D. Tex. Mar. 25, 2011)).This factor weighs *against* transfer.

Though Hulu submitted Brookins's declaration to support its motion, Hulu never represents that it will or even may call Mr. Brookins as a trial witness. But even if we assume that Brookins will testify, ███████████████████████████████████ ██████████████████████████ Brookins does not mention that it would be inconvenient for him to testify in Waco. Perhaps this is because Hulu knows that under the law, the convenience

of party witnesses is given little weight. Courts consider current employees of a party to be willing witnesses, so their locations are not persuasive in the analysis of this factor. *Rosemond v. United Airlines, Inc.*, No. H-13-2190, 2014 U.S. Dist. LEXIS 45162 at *3 (S.D. Tex. Apr. 2, 2014); *Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 11-CV-660, 2012 U.S. Dist. LEXIS 187289 at *4 (E.D. Tex. Aug. 24, 2012), report and recommendation adopted, No. 11-CV-660, 2013 U.S. Dist. LEXIS 44793, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013).

Hulu says it has employees spread through Santa Monica, Seattle, and Beijing that may have relevant information to this case, but Hulu does not identify any of them. Without this information, the Court cannot assess the convenience and costs of Hulu's party witnesses to testify at trial. "The [c]ourt gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*, No. 6:12-CV-398 MHS-JDL, 2013 U.S. Dist. LEXIS 47384 at *3 (E.D. Tex. Apr. 2, 2013).

As discussed below, SITO plans to call Tom Candelaria, Don Bate, Gene Bowen and Aaric Eisenstein as witnesses for trial. Mr. Candelaria is a party witness who will testify about the company and its history, its business in Texas, its relationship with PMC and the VideoStar joint venture, and its patent ownership. As a party witness, Mr. Candelaria can appear for trial in Waco. The three other SITO witnesses are third parties. As discussed above, Mr. Bate is a key witness – he is the only living inventor and will testify about his work with Chuck Jennings and the story behind the claimed inventions. Mr. Bate, however, has serious health concerns that prevent him from traveling to California. Bate Decl. ¶¶11-14. But apart from experts, inventors are also critical witnesses in patent litigation. Mr. Bate's expected testimony as an inventor on the asserted patents and his compromised health condition should weigh significantly in

15

assessing the convenience of the key witnesses in this case, and do *not* favor transfer.

*Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1396 (S.D. Tex. Nov. 4, 1992) ("In considering the convenience of the witnesses, the Court must primarily consider the convenience of the key witnesses. Indeed, the convenience of one key witness may outweigh the convenience of numerous less important witnesses."); *see also VLSI Tech. LLC v. Intel Corp.*, 2019 U.S. Dist. LEXIS 227809, *12 (W.D. Tex. Oct. 7, 2019) (convenience of one key witness may outweigh numerous less important witnesses and greater weight should be given to a non-party key witness); *Rittinger v. Healthy Alliance Life Ins. Co.*, 2016 U.S. Dist. LEXIS 132726, *19-20 (S.D. Tex. July 27, 2016) (same)..

Mr. Eisenstein is another third party and key witness who, as discussed above, will testify about VideoStar and its license of the patents-in-suit to Television Technology. Both Mr. Bate and Mr. Eisenstein live in Plano and Austin respectively, and are within driving distance to Waco. Bate Decl. ¶14; Eisenstein Decl. ¶8. SITO's third non-party witness is Mr. Bowen, who can offer corroborative testimony about his work on the patented technology with Chuck Jennings and Don Bate, and who can fly his plane to Waco or fly commercially, either of which is convenient. Bowen Decl. ¶¶7-9. But how many witnesses will Hulu call for trial? Who are those witnesses and what will they testify about? Hulu is silent about this. Without this information (evidence), there is nothing on Hulu's part for the Court to weigh. And Hulu bears the burden of proving that California is *clearly more* convenient forum than Waco.

Indeed, the only specific person Hulu apparently contacted and identified as a potential trial witness in this case is Christopher Newton, who states that he is willing to testify in Los Angeles about purported prior art, as discussed above. In his declaration, Newton says that the work at Sandpiper culminated in the '598 patent, but he is *not* a named inventor on that patent. In

any event, what is disclosed in the four corners of documents is prior art, not oral testimony. But even if Newton were credited as a potential witness in this case for the purpose of considering Hulu's transfer motion, his purported testimony should be given little weight as compared to third party witnesses Messrs. Bate, Bowen and Eisenstein. And when Newton states that he is unwilling to testify in Waco, this reveals that he is not really a key witness to Hulu's case. Hulu knows that experts are the witnesses who take up the task of addressing validity. *East Tex. Boot Co., LLC v. Nike, Inc.*, 2017 U.S. Dist. LEXIS 166701 at *13 (E.D. Tex. Feb. 15, 2017) (prior art witnesses are unlikely to testify at trial and are given limited weight).

Next, not a single person was identified as a potential trial witness from any of the alleged prior art entities and CDNs in Brookins's declaration nor in Hulu's brief. As such, Hulu is in no position to make sweeping statements about the convenience of unknown witnesses to appear for trial or the cost of their attendance. And simply listing Brian Kenner and Harry Gruber, the two named inventors on the face of the InterVu '716 patent in a chart (D.I. 29 at 4) and both of whom are *outside* the subpoena power of the Central District of California, does nothing to advance Hulu's argument that the Central District of California is a clearly more convenient forum. All of these unidentified CDN and unidentified/identified prior art witnesses are speculative witnesses at best. *Id*.

As explained in the facts section and reiterated above, Hulu has not satisfied its burden of identifying specific key witnesses showing that the Central District of California is a clearly more convenient forum. Hulu's non-identifications and broad statements about alleged CDNs and prior art witnesses is not enough to sustain its burden. This is in contrast to the specific witnesses SITO identifies above in more detail. This factor weighs against transfer.

      **4.**      **SITO has multiple suits pending in this District, which will cause significant practical problems if this case is transferred.**

17

In considering a transfer motion, the court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Hulu asserts that this factor "strongly weighs in favor of transfer" because this case is in its early stage and would not result in any meaningful delay. *See* D.I. 29 at 9. But Hulu fails to provide any evidence indicating that having this case in California makes it easier, more expeditious, or less expensive than Waco, apart from stating that the Central District is familiar with streaming technology. But this Court is equally familiar with streaming technology, so that argument is a red-herring. Ultimately, Hulu's argument rests on the fallacy that it is more convenient for this litigation to proceed in California – the very same dispute that Hulu's transfer motion raises. Reiterating the dispute is not what this factor is about. Indeed, if this case were transferred to California, the assignment of this case and the case schedule will likely change, and therefore, this factor weighs *against* transfer.[3] Moreover, with the Covid-19 crisis, jury trials are not even being conducted at this time in the Central District, with no guidance when they might resume.[4]

Of further significance is the fact that SITO has two pending cases in this District on the

---

[3] Hulu has filed five IPRs against the asserted patents. In *Uniloc United States v. Huawei*, the Eastern District of Texas noted that a related California case involving the same patent against Apple had been stayed pending an IPR decision, and that Apple had moved for a continuance of the stay. The California court said that it would likely grant the continuance motion, and thus, likely not reach issues relating to the patent-in-suit at least for another year. The Texas court found that this was "another practical consideration," and that this delay resulting from the IPR and stay would "negate[] any  judicial-economy benefits that would be gained from transferring the action." *Uniloc United States v. Huawei Device United States*, 2018 U.S. Dist. LEXIS 234545, at *14-15 (E.D. Tex. Sep. 6, 2018). *See also Global Commc'ns, Inc.*, 2009 U.S. Dist. LEXIS 13210*5-6 (denying transfer in four related infringement cases regarding the same patent to a district with related actions because the transferee forum had stayed the related actions and had not issued a claim construction ruling). Further, the likelihood of a stay being granted in Central District compared to this Court is 54.3% compared to 30% in this District, and zero in this Court. *See* Daignault Decl., Exs. 14, 15.

[4] *See* August 6, 2020 COVID-19 Notice for the Central District of California, available at https://www.cacd.uscourts.gov/news/covid-19-notice-2020-08.

same asserted patents, i.e., *SITO v. FloSports, Inc.*, 6-20-cv00471 (W.D. Tex. June 2, 2020) and

*SITO v. Blue Scout Media*, LLC, 6-20-cv-00910 (W.D. Tex. Oct. 1, 2020). "Judicial economy is

served by having the same district court try the cases involving the same patents." *In re*

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "To permit a situation in which

two cases involving precisely the same issues are simultaneously pending in different District

Courts leads to the wastefulness of time, energy, and money that Section 1404 was designed to

prevent." *Continental Grain Co. v. The FBL*-585, 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L. Ed. 2d

1540 (1960). The avoidance of unnecessary conflicts weighs heavily in favor of denying transfer

as there are multiple lawsuits with the same asserted patents in this jurisdiction. *Hammond Dev.*

*Int'l, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 110984 (W.D. Tex. June 24, 2020) (denying

motion to transfer venue where consolidation of two parties against whom same patents was

asserted would promote judicial economy).

     **B.**    **Public Factors do not weigh in favor of a transfer.**

          **1.**    **There are no administrative difficulties flowing from court congestion.**

     As this Court noted in its *Fintiv* decision, the "relevant inquiry under this factor is

actually '[t]he speed with which a case can come to trial and be resolved." *Fintiv*, 2019 U.S.

Dist. LEXIS 171102, at *19. And while this is not a dispositive factor in view of recent Federal

Circuit decisions (*see, e.g., In re Adobe Inc.*, No. 2020-126, 2020 U.S. App. LEXIS 23803, at *9

(Fed. Cir. July 28, 2020)), it still slightly weighs against transfer. Here, the Court has set a trial

date of March 2022. That is 15 months away. Based on U.S. District Court statistics over a 12-

month period ending in March 31, 2020, the median time to trial in this District is 24.6 months,

while the median time to trial in C.D. Cal. is 29.3 months. *See* Daignault Decl., Ex. 21. As such,

it is highly unlikely that the Central District will conduct a trial by March 2022, particularly as

mentioned above, when the Covid-19 pandemic has delayed all trials and there is .  no guidance as to when trials may resume. Thus, Hulu's claims that court congestion is an issue is without merit. In fact, one reason why SITO chose this forum was the speed and efficiency by which this Court handles patent litigation. Transferring this case to Central District of California would prejudice SITO by depriving it of its chosen forum. This factor weighs *against* transfer.

### 2.      Local interest in having localized interests decided at home.

This factor involves "the factual connection" that a case has with the transferor and transferee forum. *Volkswagen I*, 371 F.3d at 206. Hulu asserts that Central District has a stronger local interest in this litigation because it is Hulu's headquarters and cites Mr. Brookins declaration in support. *See* D.I. 29 at 10. But Defendant's generalized commercial presence is typically not sufficient to demonstrate any meaningful local interest in the outcome of a case. *Found. Med., Inc. v. Guardant Health, Inc*., 2017 U.S. Dist. LEXIS 20431 at *10 (E.D. Tex. Feb. 14, 2017). In fact, "[I]t is generally a fiction that patent cases give rise to local controversy or interest, particularly without record evidence suggesting otherwise." *Id.* As detailed above, Hulu has significant contacts with Texas, and this District, including numerous content partners, employees that diagnose and fix problems related to the accused products, and a large subscriber base. SITO's significant connections to this District, as described earlier, include its joint venture Video Star, and the inventor of the asserted patents, Mr. Bate. As such, this Court has an interest in resolving it. Therefore, this factor also weighs *against* a transfer.

### 3.      Factors 3 and 4.

Hulu concedes that these factors are neutral. D.I. 28 at 10. SITO agrees.

## V.      Conclusion

For these reasons, this Court should deny Hulu's motion to transfer.

Dated:  December 4, 2020

OF COUNSEL:

Ronald M. Daignault
Chandran Iyer
Jason Charkow
Stephanie Mandir
GOLDBERG SEGALLA
rdaignault@goldbergsegalla.com*
ciyer@goldbergsegalla.com*
jcharkow@goldbergsegalla.com*
smandir@goldbergsegalla.com*
711 Third Avenue, Suite 1900
New York, New York 10017
Telephone: (646) 292-8700

*admitted *pro hac vice*

Respectfully submitted,

THE MORT LAW FIRM, PLLC

*/s/Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax: 512-865-7950

*Attorneys for Plaintiffs SITO*