UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SITO MOBILE R&D IP, LLC and SITO MOBILE, LTD., <br>       Plaintiffs, <br>   v. <br><br> HULU, LLC, <br>       Defendant. | Case No. 6:20-cv-00472-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> **[HEARING ON MOTION REQUESTED PURSUANT TO CV-7(h)]** |

# HULU LLC'S REPLY IN SUPPORT OF ITS
# MOTION TO TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA

I. **INTRODUCTION**

SITO and Hulu are both based in C.D. Cal., and C.D. Cal. is a far more convenient forum for both parties to try this case. The extensive venue discovery SITO sought has only bolstered that conclusion. Indeed, both parties' designated corporate representatives—SITO's CEO and Hulu's Vice President of Software Development—are located and were deposed in C.D. Cal. By contrast, neither Hulu nor SITO has any relevant evidence or witnesses in W.D. Tex. SITO has not and cannot identify a single Hulu employee in W.D. Tex. relevant to this case. SITO's alleged "large sales force" in Texas is actually a single individual residing outside of this District. His sales have nothing to do with the accused technology or the patents-in-suit, and SITO does not even represent that he will testify at trial. In short, despite SITO taking more than two months to conduct extensive venue discovery, all of the evidence shows that C.D. Cal. is the clearly more convenient forum for this litigation.

The facts supporting transfer in this case are even stronger than those in *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020). Like in *Apple*, the bulk of relevant evidence will come from Hulu in C.D. Cal., while SITO has identified no relevant evidence in W.D. Tex. Like in *Apple*, most relevant party witnesses are located in C.D. Cal., and both Hulu and SITO have potential trial witnesses from C.D. Cal. Moreover, in *Apple*, the defendant had at least some relevant ties to W.D. Tex. Here, Hulu has **no** relevant engineers in Texas, **no** relevant operations (or servers) in Texas, and **no** aspect of the accused systems developed in Texas. Thus, the only contacts with the forum that SITO can identify are "untethered to the lawsuit," such as Hulu's "general presence in WDTX and the state and local tax benefits it purportedly received from the district." *Id*. at 1345. Both parties, their witnesses and evidence, and the vast majority of relevant third party witnesses are in C.D. Cal., not W.D. Tex. Thus, C.D. Cal. is clearly the more convenient venue for this case.

II. **ARGUMENT**

SITO's argument that its choice of venue "should be respected" is wrong. Opp. at 10. "[C]hoice

1

of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue." *Moskowitz Family LLC v. Globus Med., Inc*., Case No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *2 (W.D. Tex. Jul. 2, 2020) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008)). Because SITO does not dispute that it could have brought this case in C.D. Cal, the Court should consider the well-established private and public interest factors. Those factors strongly favor transfer to C.D. Cal.

### A. The Private Interest Factors Strongly Favor Transfer to C.D. Cal.

The vast majority of Hulu's key witnesses and evidence is in C.D. Cal., and Hulu's other relevant evidence is closer to and more easily obtained from C.D. Cal. Additionally, numerous California-based third party companies and witnesses (including those SITO intends to call at trial) have evidence and knowledge relevant to infringement and damages. SITO does not dispute any of this. Nor does SITO identify any of its own relevant ties to this District. Instead, SITO relies on generalized arguments about Hulu's customer service center in San Antonio, without identifying any evidence or witnesses connected to the accused technology, and wrongly argues that smaller, local third parties can present the same evidence as Hulu's main national content and advertising partners. Thus it remains undisputed that nearly all *relevant* evidence and witnesses are in C.D. Cal. and that bringing them to Waco would create significant expense and inconvenience to Hulu and third parties. Hulu's "general presence in WDTX and [] tax benefits" are only distractions. *In re Apple*, 979 F.3d at 1345.

#### 1. The Relevant Sources Of Proof Are In Or Near C.D. Cal.—Not W.D. Tex.

The Federal Circuit recently clarified that the first private interest factor considers the location of relevant sources of *documentary and physical* evidence, and not witness location. *In re Apple*, 979 F.3d at 1339 (citing *In re Volkswagen*, 545 F.3d at 316–18); *see also Parus Holdings Inc. v. LG Elecs. Inc.*, Case No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020). As this Court has acknowledged, the bulk of the relevant evidence usually resides with the accused infringer.

*Id.* (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the defendant's [evidence is] kept weighs in favor of transfer to that location." *Id.*

Hulu's key technical documents—those relating to the design and implementation of the accused MPEG-DASH and HLS functionalities, content delivery to CDNs, and alleged revenue sharing—are created, maintained, and accessible in Hulu's Santa Monica, CA headquarters. Brookins Decl. ¶¶ 5-8; Ex. 1 at 44:13-48:24, 52:7-53:5, 54:4-58:13, 124:16-127:9. Relevant source code is also created and maintained by engineers in Santa Monica and Seattle. Brookins Decl. ¶ 8; Ex. 1 at 43:2-44:21. Hulu's San Antonio employees, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ that source code or relevant technical documents. Ex. 1 at 51:7-53:5; Brookins Decl. ¶¶ 11-12. SITO's only response is that Hulu's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and that documents in the cloud can be accessed anywhere. Opp. at 11. But that does not change the indisputable fact that key documents and source code are created, maintained, and accessed by Hulu's engineers in C.D. Cal. The engineers who know what documents and code are relevant, and where and how to find them, are located in C.D. Cal.[1]

Moreover, Hulu identified relevant evidence in the possession of third party CDNs, content partners, advertising partners, and their employees, located in or nearer to C.D. Cal—facts SITO does not dispute. *See, e.g.*, Brookins Decl. ¶¶ 13-20; Ex. 1 at 90:20-98:13, 98:25-100:22, 107:18-108:3. Instead, SITO speculates, without support, that these third parties' technical or financial documents would be equally available in Texas because certain third parties have an office in or are subject to subpoenas in Texas. Opp. at 12. To the contrary, Hulu has produced a sworn declaration that Hulu's actual third party contacts are in C.D. Cal. Brookins Decl. ¶¶ 13-21. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Brookins

---

[1] SITO's assertion that "Hulu's documents are accessible from any of its offices, including San Antonio" is misleading. *See* Opp. at 6. Hulu's San Antonio office is a customer service center. These employees ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the relevant documents and source code.

Decl. ¶¶ 14-18.

Third party companies that developed prior art systems are also in California—and SITO offers no evidence to support its unreasonable speculation that Apple, Oracle, and Microsoft's late 1990's prior art evidence would be accessible in Texas offices opened years later. Opp. at 3. SITO baselessly asserts that the "same unique information" about Hulu's revenue sharing practices with national content partners such as CW and FX Networks (which are located in C.D. Cal.) can be obtained from regional or local content partners. It cannot, as ▌▌▌▌▌▌▌▌▌▌ Ex. 1 at 103:2-22, 105:10-18, 107:18-108:3. Even if "some documents relevant to this case [were] located in the District"—which SITO has not shown—it would be legal error to hold that a small number of documents outweighs the overwhelming amount of relevant evidence Hulu has shown to be located in and near C.D. Cal. *In re Apple*, 979 F.3d at 1340.

SITO's relevant evidence is also in C.D. Cal., not W.D. Tex. SITO's CEO admitted that SITO has no relevant evidence or customers in W.D. Tex. Ex. 2 at 57:25-59:2. Instead, some of SITO's most significant (and relevant) creditors are located in California. Ex. 2 at 49:24-52:10; Ex. 3 at 9-10. SITO's written discovery responses also confirmed that SITO has no relevant evidence in W.D. Tex. Ex. 4 at 3-5 (identifying no evidence, witnesses, customers, or revenue in W.D. Tex.); Ex. 5 at 9-10 (admitting that SITO has no business or customers in W.D. Tex.).

Unable to identify any of its own documents in W.D. Tex., SITO relies on: (1) documents relating to a VideoStar joint venture that SITO alleges are maintained in the ***Southern*** District of Texas, and (2) alleged "records of [inventor Donald Bate's] work at World Streaming Networks at his home office in Plano," which is in the ***Eastern*** District of Texas. Opp. at 7-9, 13. SITO never explains the relevance of VideoStar or Mr. Eisenstein (Manager of VideoStar) to this case. *Id.* at 7, 13, 16. Indeed, there is no mention of VideoStar or Mr. Eisenstein in SITO's Complaint, in SITO's initial production, or in SITO's responses to Hulu's venue discovery interrogatories or requests for admission. *See* Ex. 4

4

at 3-4 (failing to identify any "connections, business relationships, or business interests in W.D.Tex"); Ex. 5 at 9-10 (admitting that SITO has no customers or business in W.D. Tex.); Ex. 6 (identifying no Texas billing records for VideoStar or Mr. Eisenstein). SITO also provides no evidence that the alleged "records" of Don Bate actually exist. *See* Opp. at 8 (stating without citation to his "business records … in Plano"), 13 (same). Tellingly, Mr. Bate makes no mention of documents or records in his declaration. Bate Decl. ¶¶ 1-14. SITO has produced none of these records to Hulu or even suggested what they contain. In the absence of such proof, SITO's speculative arguments should be given no weight.

In light of these facts, the first private interest factor weighs heavily in favor of transfer.

### 2. Key Witnesses Are In Or Near C.D. Cal.—Not W.D. Tex.

The most important factor is "the cost of attendance for willing witnesses." *Parus Holdings*, 2020 WL 4905809, at *5. Assessing the relative convenience to various witnesses requires considering the "totality of the circumstances," including "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc." *Moskowitz Family*, 2020 WL 4577710, at *4.

Contrary to the baseless supposition in SITO's brief, Mr. Brookins *is* a key witness that Hulu intends to bring to trial. As Hulu's V.P. of Software Development, Mr. Brookins leads the engineering teams responsible for the development and implementation of the accused MPEG-DASH and HLS protocols, as well as Hulu's ████████████████████████████████ Ex. 1 at 22:17-23:15; Brookins Decl. ¶ 5. Regardless of his tenure at Hulu, he has access to and personal knowledge of these accused streaming functionalities that will be highly relevant to SITO's claims and Hulu's defenses. *Id.*, ¶¶ 5-8.

Other relevant Hulu engineers are also in and closer to C.D. Cal. For instance, Mr. Brookins testified about software engineers at Hulu's Santa Monica facility who report directly to Mr. Brookins

5

and manage ▮ other software engineers in Santa Monica. Ex. 1 at 28:5-30:10; Brookins Decl. at ¶ 5. Other key Hulu employees reside and work in Seattle, which is much closer to Los Angeles than Waco. This further supports C.D. Cal. as the most convenient venue.

SITO's assertion about travel by Mr. Brookins and other Hulu witnesses *for their work at Hulu* has no bearing on whether it is convenient for them to travel to Waco *for a patent infringement trial*. *See Vassallo v. Goodman Networks, Inc.*, No. 5:14-CV-74, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) ("Defendant's usual business travel costs have no bearing on the relative convenience of traveling to the venues in question."). The Fifth Circuit has emphasized that the transfer analysis weighs the amount of "time which these fact witnesses must be *away from their regular employment*." *In re Volkswagen*, 371 F.3d at 204-05. Mr. Brookin's ▮▮▮▮▮▮▮▮▮▮ is part of his regular employment, whereas travel to Waco for trial is not. Moreover, Mr. Brookins ▮▮▮ ▮▮▮▮▮▮▮▮▮▮. Ex. 1 at 26:16-18. Indeed, traveling to Waco to testify at a patent trial would add to his previously burdensome ▮▮▮▮▮▮▮▮▮▮.

In the face of the overwhelming presence of key technical and financial witnesses in and near C.D. Cal., SITO relies on unrelated customer service employees in Hulu's San Antonio location to justify keeping this case in W.D. Tex. Hulu's San Antonio customer support employees have no personal knowledge of development, implementation, or operation of the accused MPEG-DASH and HLS protocols. Ex. 1 at 52:7-21. Even after extensive venue discovery, including Hulu's production of an organization chart of its San Antonio office, SITO cannot identify a single employee in San Antonio with knowledge relevant to this case. *See* Opp. at 1-3, 12.

SITO admits that it has no ties to this District. SITO had 29 employees in California, and only 17 in Texas—none of whom resided in the W.D. Tex. Ex. 7. SITO substantially reduced its workforce earlier this year, cutting almost all ties with Texas. Ex. 2 at 37:3-24. Most of SITO's remaining employees are located in or near C.D. Cal., including SITO's CEO, COO, Creative Director, and

6

support employees.² By contrast, SITO has **one** current employee in all of Texas—a sales manager in N.D. Tex. Ex. 2 at 37:21-39:19. SITO's references to a "large sales force in Texas, run by Mr. Sean Clayton" (Opp. at 7), the "sales team headed by Mr. Sean Clayton" and "Mr. Clayton and his team" (Ex. 4 at 2) in fact refer to only Mr. Clayton himself—and he is not located in W.D. Tex. *See* Ex. 2 at 37:21-39:19.³

Many important third party witnesses—including the engineers knowledgeable about Hulu's content streaming delivery via CDN partners, and developers of prior art critical to Hulu's defenses—are also located in C.D. Cal. Brookins Decl. ¶¶ 13-18. In addition, third party witnesses from Hulu's content partners in C.D. Cal are knowledgeable about Hulu's revenue sharing agreements. Brookins Decl. ¶¶ 19-20. As noted above, SITO's assertion that witnesses ▮▮▮ in Texas can provide the "same unique information" as Hulu's national content and advertising partners is false. Section II.A.1, *supra*. Moreover, even if such an assertion were true, it fails to show any unique information that justifies keeping this case in W.D. Tex. *See Moskowitz Family*, 2020 WL 4577710, at *3 (granting transfer where Texas witnesses "likely do not have any unique evidence").

SITO argues that ▮▮▮ these likely third party witnesses in C.D. Cal. if they are willing to travel to Waco for this case. *See* Opp. at 4, 12-13, 17. Such an inquiry, however, is not required, as the Fifth Circuit and this District have logically recognized that "[w]itnesses [] suffer monetary [and] personal costs" that are "increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way." *Volkswagen II*, 545 F.3d at 317; *Wet Sounds, Inc. v. Audio Formz, LLC*, 2017 WL 547916, at *3 (W.D. Tex. Oct. 11, 2017).

---

² SITO has 7-8 employees: 5 in southern California, 1 in Dallas, and 1-2 part-time employees in New Jersey. *See* Ex. 2 at 27:5-7, 40:15-42:22; Ex. 4 at 2-3; Ex. 5 at 4-8.

³ SITO's and Mr. Candelaria's speculation about its future financial state and customers in Texas should be disregarded. Opp. at 7. First, Mr. Candelaria's predictions are not facts. Second, as a matter of law, SITO's future actions are irrelevant—venue is assessed at the time the Complaint was filed. *See Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017).

SITO also cherry-picks three third-party witnesses to argue in favor of keeping this case in Waco. Opp. at 9. But even that misleading effort fails to establish connections to W.D. Tex. First, *none* of these witnesses—Mr. Bowen, Mr. Eisenstein, or Mr. Bate—reside in this District. Opp. at 7-9. Second, Mr. Bowen *resides in Placerville, California*, which is 1,300 miles closer to C.D. Cal. than Waco, making C.D. Cal. the more convenient location under § 1404(a) as a matter of Fifth Circuit law. *In re Volkswagen II*, 545 F.3d at 317. Third, SITO's assertion that Mr. Eisenstein is necessary to provide relevant testimony is tenuous at best. VideoStar is a joint venture of SITO, meaning that SITO likely has possession, custody, and control over any of VideoStar's evidence regarding the Asserted Patents, and SITO has never mentioned VideoStar except to oppose transfer. Finally, Hulu does not dispute that Mr. Bate should not travel at the risk of his health. But driving to Waco to be in a courtroom with other strangers is itself risky. Indeed, another court in Texas recently had to declare a mistrial after 15 trial participants tested positive for COVID-19 despite following stringent sanitation and distancing protocols. *ResMan, LLC v. Karya Property Management, LLC*, Case No. 4:19-cv-00402 (Min. Entry) (E.D. Tex. Nov. 17, 2020). To avoid these risks and avoid driving two hours to Waco, Mr. Bate could testify by video from his home, which neither weighs for or against transfer. In any case, other courts have found from experience that "inventor testimony is likely to be of marginal significance to the outcome of a trial." *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 377 (D. Del. 2012).

For these reasons, this factor heavily weighs in favor of transfer.

### 3. Availability Of Compulsory Process For Unwilling Witnesses

SITO mistakenly and repeatedly argues that witnesses in California are outside the subpoena power of C.D. Cal. *See* Opp. at 12, 13, 17. The Federal Rules of Civil Procedure grants subpoena power to "command a person to attend trial … *within the state* where the person resides." Rule 45(c)(1)(B). All of the third party witnesses in California are within the subpoena power of C.D. Cal., but outside this Court's subpoena power. As such, this factor weighs heavily in favor of transfer.

8

### 4.     Other Practical Problems For Easy, Expeditious, Inexpensive Case

For this factor, SITO relies on Court closures due to the current COVID-19 crisis and SITO's lawsuits against local W.D. Tex. companies. Even if current pandemic closures are a proper factor for consideration, they do not weigh in favor of transfer. Flying Hulu's and SITO's witnesses from C.D. Cal. to Waco would increase the risk of transmission of disease. California is currently under a severe stay-at-home order (including a ban on all non-essential travel), and the CDC warns against traveling if cases are high at the community of origin—Los Angeles county recently reported 12,819 new cases in a single day. *See* http://publichealth.lacounty.gov/media/coronavirus/data/index.htm.

SITO's lawsuits against FloSports and Blue Scout Media also do not favor keeping the case in Waco. These transparent attempts to manipulate venue by suing local companies should be given no weight. SITO has essentially self-stayed the *FloSports* case, as the parties have not served invalidity contentions or claim construction exchanges, flouting the scheduling order that is supposed to lead to a *Markman* hearing in March 2021. Ex. 8 (Case No. WA:20-cv-00471, Dkt. 23).  SITO's lawsuit against Blue Scout Media in Waco is legally irrelevant because SITO sued Blue Scout Media only after Hulu and SITO conferred about this motion to transfer (*see* Case No. 6:20-cv-00910, Dkt. 1)—and transfer should be considered based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  Nevertheless, it appears to be a sham lawsuit as Blue Scout has not yet filed an answer or sought an extension, without any reaction from SITO.  Finally, SITO does not seriously dispute that C.D. Cal. courts are more familiar with Hulu's products and technology.

### B.     The Public Interest Factors Weigh in Favor of Transfer to C.D. Cal.

Relevant public interest factors do not consider "merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).  Only the first two public interest factors are disputed.

SITO argues that W.D. Tex. has a four-month faster median time-to-trial and that the Court has set a trial date. Opp. at 19-20. First, official data from the District Courts shows the median time to civil trial for the 12-months ending June 2020 is 1.2 months ***shorter in C.D. Cal.*** than W.D. Tex. Dkt. 28-14. Second, the current schedule and "general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 2020 WL 6554063 at *8. Third, SITO does not dispute that this Court's docket is far more congested than the average C.D. Cal. docket, meaning "trial may be speedier in another court because of its less crowded docket." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). Finally, SITO argues that trials are on hold in C.D. Cal., ignoring the same is true of civil trials in Waco. Ex. 9.

The local interest factor favors transfer. SITO fails to consider the ***relevant*** ties to the respective fora. None of the evidence indicates that W.D. Tex. would have any unique interest in resolving this case. In fact, although SITO asserts that it has "significant connections with this District," it refers only to its VideoStar joint venture, located in Sugarland in the Southern District, and the asserted patents' inventor Don Bate, who resides in Plano in the Eastern District. Neither of these "connections" are to W.D. Tex. And neither VideoStar nor Mr. Bate are parties to this litigation—as third parties, they have no stake in this litigation. By contrast, Hulu and SITO are both based in C.D. Cal. and the majority of their workforces in C.D. Cal. Further, the accused products and accused agreements in this case were developed, ▇▇▇▇▇▇▇▇ implemented in C.D. Cal. Brookins Decl. ¶¶ 5-9, 19-20. As the Federal Circuit held in *In re Hoffmann-La Roche Inc.*, these types of "significant connections between a venue and the events that gave rise to suit" create strong local interest, whereas "the sale of an accused product that its offered nationwide" do not. 587 F.3d 1333, 1338 (Fed. Cir. 2009). For this same reason, SITO's cites to Hulu's Texas subscriber and revenue numbers are irrelevant to this transfer analysis. Opp. at 1.

SITO's citations to third parties who reside outside of this District cannot outweigh the legitimate, significant, and relevant connections between Hulu and the Central District of California. For these reasons, the public interest factors weigh in favor of transfer.

| | |
|---|---|
| Dated: December 11, 2020 | /s/ Darin W. Snyder |

        Darin W. Snyder – Cal. S.B. # 136003
        Amy K. Liang – Cal. S.B. # 291910
        **O'MELVENY & MYERS LLP**
        Two Embarcadero Center, 28th Floor
        San Francisco, CA 94111-3823
        Phone: (415) 984-8700
        Facsimile: (415) 984-8701
        dsnyder@omm.com
        aliang@omm.com

        Brett J. Williamson – Cal. S.B. # 145235
        Cameron W. Westin – Cal. S.B. # 290999
        Andrew S. Bledsoe – NY # 5691381
        **O'MELVENY & MYERS LLP**
        610 Newport Center Drive, 17th Floor
        Newport Beach, CA 92660
        Phone: (949) 823-6900
        Facsimile: (949) 823-6994
        bwilliamson@omm.com
        cwestin@omm.com
        abledsoe@omm.com

        **Attorneys for Defendant**
        **HULU, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record via the Court's ECF system on December 11, 2020.

<i>/s/ Darin W. Snyder</i><br>
Darin W. Snyder